## UNITED STATES v. TWO OBSCENE BOOKS.

### No. 25449.

United States District Court
N. D. California, S. D.

Aug. 24, 1950.

George Olshausen, San Francisco, Cal., for claimant Ernest J. Besig.

Frank J. Hennessy, United States Attorney, and Reynold H. Colvin, Assistant United States Attorney, San Francisco, Cal., for United States of America.

GOODMAN, District Judge.

On June 24, 1949, the United States filed a libel of information herein charging that the two obscene books named as respondents, were imported into the United States in violation of Section 305 of the Tariff Act of 1930, 19 U.S.C.A. § 1305, and praying for their forfeiture and destruction.

One Ernest J. Besig appeared as claimant, filed an answer to the libel and alleged that the respondent two books were not subject to seizure and should be returned to the claimant. In effect he claims the books to be not obscene.

The court takes judicial notice of the fact that Ernest J. Besig is the Director of the American Civil Liberties Union of Northern California.

In an amendment to his claim and answer, he asserts that 19 U.S.C.A. § 1305 abridges freedom of speech and violates the Constitution (First Amendment).

Now before the court for determination is the claimant's motion for a commission to take the depositions, on written interrogatories, of 19 persons alleged to be experts in the field of literary criticism. Of the 19 named, 1 resides in Connecticut, 2 in Illinois, 1 in Massachusetts, 2 in New York, 1 in Germany, 6 in France, 2 in Holland, 1 in Belgium, and 1 in Switzerland, and 2 in England.

In the written interrogatories, the so-called literary critics are asked to state their respective opinions of the two books "from the stand point of value and standing as works of literature." The court assumes that since the testimony is sought by claimant, it will be favorable to his cause.

The two books are authored by Henry Miller and are entitled respectively "Tropic of Capricorn" and "Tropic of Cancer." They were printed and published in 1948 at 4 Rue de la Paix, Paris by the "Obelisk Press." Their published price is 400 francs. On each book is printed: "Must not be imported into England or the U. S. A."

The United States objects to the issuance of the commission on the ground that the obscenity of the books may be determined from the books themselves without the necessity of any so-called expert testimony.

While the proceeding, being in rem, is initiated on the admiralty side of the court, nevertheless the Rules of Civil Procedure will apply inasmuch as, once answer is filed, the action proceeds at law. Eureka Productions v. Mulligan, 2 Cir., 108 F.2d 760. The court therefore has power to determine whether or not the commission should issue. Rule 28, Fed.Rules.Civ.Proc., 28 U.S.C.A.

At the time of the submission of the motion, it was stipulated that the two respondent books would be deemed appended to the motion as exhibits to be considered by the court in arriving at decision.

The court has read both books.

In United States v. One Book entitled "Ulysses", 2 Cir., 72 F.2d 705, at page 708, Judge Augustus Hand states: "While any construction of the statute that will fit all cases is difficult, we believe that the proper test of whether a given book is obscene is its dominant effect." In my opinion the dominant effect of the two respondent books is obscene. Both books are replete with long passages that are filthy and revolting and that tend to excite lustful thoughts and desires. While the books also have passages, and indeed chapters, that may be said to be of literary merit, the obscene portions have no literary value; they are directly, completely and wholly filthy and obscene and have no reasonable relation to any literary concept inherent in the books' theme.

I should very much like to observe Mr. Besig reading the innumerable filthy passages in the books to young people of his acquaintance. If he is the high-minded person that I have believed him to be, I would expect all thoughts of "free speech" and "civil liberties" to then and there disappear into complete desuetude.

There is no direct authority for the proposition asserted by claimant that the estimates or criticism of so-called literary experts are relevant in a proceeding under 19 U.S.C.A. § 1305. True, there is reference in United States v. One Book entitled "Ulysses," supra, and in United States v. Levine, 2 Cir., 83 F.2d 156, to evidence of the opinions of qualified critics. These statements, however, were purely dicta, as in both cases all that was ever submitted to the lower court or before the higher court were the books themselves.

Obscenity is a question of fact which can be determined by the court or the jury by reading the books. Salacious or filthy literature or pictures cannot become clean and wholesome upon the mere statement of some alleged or so-called critic.

In my opinion, the issuance of a commission or the taking of the depositions of the 19 persons named in claimant's motion is unnecessary and unwarranted. Such testimony as might thereby be elicited is wholly irrelevant and immaterial.

I am at a loss to perceive what could prompt the representative of the American

936

Civil Liberties Union to urge the court to permit the introduction into this country of books of this kind. "Civil liberties" and "freedom of speech" are certainly not synonymous with license and obscenity.

The motion of the claimant to take depositions is denied.